RITCHIE v. OBDYKE et al.

(Circuit Court, E. D. Pennsylvania. May 15, 1894.)

No. 16.

1. PATENTABLE INVENTION—SHEET-METAL ELBOWS.

The making of sheet-metal elbows longitudinally corrugated, and having only longitudinal seams, *held* to involve no invention, it appearing that corrugated elbows having transverse seams, and plain metal elbows having only longitudinal seams, were both old, and that all that was done was to make the corrugated elbows without the transverse seams. Affirmed in 65 Fed. 224.

2. SAME.

The Ritchie patent, No. 342,465, for a "sheet-metal expansible elbow," *held* void for want of invention. Affirmed in 65 Fed. 224.

This was a suit in equity by David A. Ritchie against Benjamin P. Obdyke and W. Austin Obdyke for infringement of a patent for a "sheet-metal expansible elbow."

Fish, Richardson & Storrow, for complainant.
Philip I. Dodge, for respondents.

DALLAS, Circuit Judge. This suit is brought on letters patent No. 342,465, granted May 25, 1886, to the complainant. The claim is as follows:

"As an improved article of manufacture, a sheet-metal elbow composed of curved and longitudinally corrugated pieces of metal having only longitudinal seams, whereby the said elbow is free to expand uniformly to avoid bursting, substantially as described."

Corrugated elbows were old, but they were made from the ordinary corrugated pipe, the required curvature being effected by "removing small gores" thereof, and bringing together and uniting by soldering the edges thus produced. Elbows so made necessarily contained transverse seams, and the "improved article" of the patentee, "having only longitudinal seams," is undoubtedly a preferable one, and it has been adopted by the trade to the exclusion of all pre-existing constructions. The gist of the invention claimed, if there was invention, is the exclusively longitudinal seams feature of the complainant's elbow, and the important question in the case is whether the inventive faculty was exercised in its attainment. The elbows previously in use for the precise purpose for which this elbow is intended were made in a manner which did not suggest the absence of transverse seams, but, on the contrary, necessarily involved their presence. The method, as well as the product, of the patentee is different. In his specification he says:

"In the manufacture of my improved expansible elbow I take blanks, concave at one edge and convex at the other, and subject them to the action of corrugating dies, which corrugate the said blanks, and at the same time give them a general semicircular outline, and in such condition the flanges of the corrugated blanks can be joined together by folding the flanges to form a locking joint."

In other words, he takes properly shaped blanks, and subjects them to the action of a die, by which they are corrugated and given a semicircular outline. Each blank, after having been thus treated, constitutes one longitudinal half of an elbow, and joining two of these parts by folding or locking together the flanges with which each is provided completes the operation, and the final product is thus represented in cross section by Fig. 5 of the patent:

Sheet-metal elbows having the material characteristics of that of the complainant—being formed of two stamped halves, and without any seams except those which united the halves longitudinally—were well known before his patent was applied for. It is true that no such corrugated elbow appears to have been made, and I cannot agree that the hexagonal form shown in Fig. 9 of the Sayoral patent is equivalent to corrugation; but the use of corrugated metal in making elbows was not new, and longitudinally corrugating and outlining curved blanks by subjecting them to the action of dies so as to form two halves, and then uniting those halves by longitudinal seams, to make spouts for coffee pots and tea pots, had been quite extensively practiced. What difficulty then was there left for Mr. Ritchie to overcome? It is said, and I think correctly, that by reason of the size and configuration of the corrugations essential to these elbows their halves could not be stamped as those of coffee-pot spouts had been, except by omitting from the elbow two of the indentations which are present in the pipe with which it is commonly used, and, accordingly, two of the pipe corrugations were relinquished in making the elbow. This was not desirable, though not materially harmful. The important fact is that, when it was found that all of the desired indentations could not be formed by a die, the necessity for acceptance of the lesser and practicable number was plainly obvious. In patent No. 78,564, dated June 2, 1868, granted to William Austin for pipe made of corrugated sheets of metal, it had been stated that the corrugations may be of any desired number, and of this the present patentee was compelled to take advantage, in order that he might make use of a die as it had been theretofore used for analogous purposes. Consequently he made an elbow somewhat varied in cross section from the straight pipe, as is shown by these representations:

*Pipe.*

*Elbow.*

The evidence is that this difference between the pipe and the elbow gives rise to no substantial difficulty in fitting them together; but on the subject of connecting the one with the other the patent is silent, and it is unimportant.

The learned counsel for the complainant contends that, though "he has not claimed the method of making his elbow," Mr. Ritchie "is entitled to the credit of the idea of such an elbow, and to the credit of finding out what no one knew before; that is, how to make it." This well states the case of the complainant, but the answer to it seems to me to be apparent and conclusive. It is: What has not been claimed is not patented. An "idea," however creditable, is not patentable; and that which any skilled mechanic would naturally have done, if possessed of knowledge of what had previously been accomplished, cannot be credited, as an inventive act, to any one; not even to him who first suggests and actually does it. The bill is dismissed, with costs.